**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

In the Matter of: Case No. **10-01330-lmj7**

**Carolyn L. Vogt,**

Debtor

**David K. Vogt,** Adv. Pro. No. **10-30091-lmj**

Plaintiff

v.

**Carolyn L. Vogt,**

Defendant

**MEMORANDUM OF DECISION**
**(date entered on docket: December 3, 2010)**

Pro se Plaintiff David Vogt ("Plaintiff") filed an 11 U.S.C. section 523(a)(15) complaint to determine dischargeability against Chapter 7 Debtor Carolyn Vogt ("Debtor") with respect to one of Debtor's scheduled and discharged unsecured debts. Relying on certain provisions in their stipulated decree of dissolution of marriage and on a subsequent order of contempt, Plaintiff contends he should be held harmless as to the $10,042.00 deficiency Debtor owed AmeriCredit for a repossessed and liquidated Saturn Aura. Relying on other provisions in the dissolution decree, Debtor argues that Plaintiff is solely responsible for this debt because he failed to file his own bankruptcy petition. Having reviewed the record and having considered the arguments of the parties, the Court enters its decision in favor of the Plaintiff.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1334 and the standing order of reference entered by the United States District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. section 157(b)(2)(I).

BACKGROUND

On January 25, 2008 Debtor filed a petition for a dissolution of her marriage to Plaintiff. On August 21, 2008 the Iowa District Court in and for Polk County entered the parties stipulated decree of dissolution of marriage. Neither party was awarded alimony or spousal support. With respect to certain vehicle debt, the decree provided that:

> 23. VEHICLES—The [Debtor] is awarded the Saturn Aura, and the [Plaintiff] is awarded the lease on the Chevy Silverado. The parties shall execute any documents necessary to vest title and/or ownership to such automobile(s) solely in the other parties' [sic] name by September 1, 2008.
>
> a. The [Debtor] shall assume, indemnify and hold the [Plaintiff] harmless for any debt or other liability relating to the Saturn Aura.[1]
>
> b. The [Plaintiff] shall assume, indemnify and hold the [Debtor] harmless for any debt or other liability relating to the Chevy Silverado.
>
> c. The Treasurer of the county where the party is residing is herewith ordered to transfer title of the aforementioned vehicle(s) without the necessity of making any sales tax payments.

(Debtor's Exhibit A, at 12-13.) The decree further provided that:

> 25. MARITAL & PERSONAL DEBT.
>
> a. The parties have each agreed to file for bankruptcy individually. Each party will list any marital debt and any debt in his/her own name in the bankruptcy. If either party fails to file bankruptcy, then he/she is solely liable for all joint debt and any debt in his/her own name.

[1] This subparagraph was at the top of page 13 of the dissolution decree.

i. The [Debtor] agrees not to discharge the MidAmerican bill of ~$1200.00 for services received prior to June 1, 2008 and is solely liable for this debt.

ii. The [Debtor] shall produce to [Plaintiff] a copy of a quarterly statement from the Debt Relief Company.

b. The parties shall assume and pay all indebtedness on the items in his/her possession to which they are entitled and indemnify and hold the other harmless thereon except as is specifically set out in the rest of this Decree.

c. Additionally, any personal debts incurred by either party subsequent to the parties' separation (May, 2008 [sic]) shall be the sole and singular debt and responsibility of that party incurring the same. The parties shall assume and pay all said indebtedness and will indemnify and hold the other harmless there from [sic].

d. The parties are advised that a joint debt is a debt for which both parties are fully responsible to pay, regardless whether it is on a vehicle, homestead real estate or unsecured credit card debt.[2]

e. Each party understands and acknowledges that none of their creditors are affected by this decree, notwithstanding their agreement concerning joint debt division, each party is still fully liable for those debts to the original creditor.

i. "Hold harmless" means, for the purpose of this decree, that in the event the party who did not agree to assume a joint debt has to pay any money or incurs any expense because the party who did agree to assume a joint debt did not properly service the joint debt, the party who originally agreed to assume that joint debt will fully reimburse the non-assuming party for any payment to said creditor and any expenses incurred therein.

(Debtor's Exhibit A, at 13-14.)

Jessica Armstrong, who represented the Debtor in the dissolution proceeding, testified that she drafted the dissolution decree. She stated that the agreement to seek bankruptcy relief was the end result of the parties' mediation. She included paragraph 25(a) at Plaintiff's insistence. It was her understanding that Plaintiff was concerned that

[2] This subparagraph was at the bottom of page 13 of the dissolution decree.

Debtor would not follow through with the agreement. According to her, "if either one of them didn't follow through with it, then they would be responsible for all of the debt, anything that remained, any joint debt or individual debt." (Tr. 15, ll. 22-25.)

Julia Roose, who represented the Plaintiff in the dissolution proceeding, testified that she could not recall who insisted upon the inclusion of paragraph 25(a) in the decree. When asked upon direct examination by Debtor's attorney whether she would have informed Plaintiff "that he would be responsible for the debts, the joint debts" if Debtor filed for bankruptcy and he did not, she responded affirmatively. (Tr. 19, ll. 5-9.) When asked upon cross-examination by Plaintiff if there was anything in the decree "that states if she allows the car to be repossessed that I would assume that debt then," she responded: "No. Not that I remember. Not that I've seen in here. Just the language up above about the car." (Tr. 19, ll. 14-19.)

On or about February 25, 2009, AmeriCredit sent Plaintiff a letter advising him that the Saturn Aura had been repossessed on January 8, 2009 and sold for $9,500.00 at a private auction on February 10, 2009. (Plaintiff's Exhibit 1.) The creditor requested Plaintiff contact its Loss Recovery Department to make arrangements to pay $10,042.00 that consisted of the $9,342.50 balance of the amount financed, $405.00 retaking charges, $175.00 charges at auction, and $119.50 late fees. Id.

On November 24, 2009 the Iowa District Court in and for Polk County entered an order on the parties' applications for contempt of court against each other.[3] Of relevance to the debt in issue, the state court found and ordered that:

[3] In the contempt matter, Thomas G. Crabb was the attorney for the Debtor and Lynne W. Hines was the attorney for the Plaintiff.

1. The [Debtor] was required to assume the Saturn payments in the Decree. The vehicle was subsequently repossessed and there is owed a deficiency of approximately $9,300.00. [Debtor] shall be responsible for the deficiency. With regard to Count I of [Plaintiff's] Application, the [Debtor] is found guilty of Contempt. [Debtor] shall serve thirty (30) days in jail but mittimus shall be withheld if [Debtor] presents to the court a payment plan approved by the creditor for payment of this debt in a timely manner.

(Plaintiff's Exhibit 2, at 1.)

On March 19, 2010 Debtor filed a petition for relief under Chapter 7 of Title 11 of the United States Code. On Schedule F (Creditors Holding Unsecured NonPriority Claims), Debtor listed a debt to "Americredit Financial Service" in the amount of $10,042.00 and indicated it was related to a repossessed auto. Debtor did not check the codebtor column for that debt.[4] Debtor did not list the debt on Schedule H (Codebtors).[5] Debtor failed to mention the contempt action in paragraph 4(a) of her Statement of Financial Affairs.[6]

On June 18, 2010 Plaintiff filed his complaint to determine dischargeability. He mentioned the dissolution decree and the contempt order but did not attach copies to his complaint. On June 25, 2010 Debtor filed her answer to the complaint. Relying

---

[4] Debtor also listed two vehicle debts to GMAC on Schedule F. She reported one debt related to an October 2007 loan and had a codebtor and the other debt was for an auto lease but did not have a codebtor.

[5] On Schedule H, Debtor listed Plaintiff as the codebtor on the October 2007 loan to GMAC. (She also listed him as a codebtor on one debt to Wells Fargo Home Mortgage that also appears on Schedule D (Creditors Holding Secured Claims) with a checkmark in the codebtor column.)

[6] That paragraph of Official Form 7 directs a debtor to include all suits and administrative proceedings to which that debtor is or was a party within one year immediately preceding the commencement of that debtor's bankruptcy case.

upon paragraph 25(a) of the dissolution decree, she alleged that Plaintiff had not filed a bankruptcy petition and therefore was responsible for the debt in issue.[7] She did not attach a copy of the dissolution decree to her answer. She made no mention of any contempt order.

Debtor subsequently filed a motion for summary judgment. She included a copy of the dissolution decree. In her brief in support of her motion, she again relied upon paragraph 25(a) of the decree and her allegation that Plaintiff had not sought bankruptcy relief to reach the conclusion that Plaintiff was responsible for the debt in issue.[8] She also stated that "[Plaintiff's] complaint alleges that the Americredit debt 'has been ordered to be paid through a judgement [sic in the original and in the motion for summary judgment] against the [Debtor].' [Debtor] knows of no such judgment." (Docket Number 8, at 3.)

This Court disposed of the motion for summary judgment as follows:

> Docket Text Ruling Regarding Motion for Summary Judgment Against Plaintiff David Vogt. Whereas the language in paragraph 25(a) of the August 21, 2008 Stipulated Decree of Dissolution of Marriage indicates that each party would list any marital debt and any debt in his or her own name in their respective bankruptcy cases, whereas Defendant Carolyn Vogt listed the debt in issue (Americredit Financial Service in the amount of $10,042.00) on Schedule F (Creditors Holding Unsecured Nonpriority Claims) but did not check the codebtor column and did not include this debt on Schedule H (Codebtors), and whereas it is not clear from the dissolution decree whether this particular debt is a joint debt, the Court hereby finds that there are genuine issues of material fact regarding the nature of this debt and how it should be construed under the dissolution decree. Accordingly, the motion for summary judgment must be denied. Beyond notice of electronic filing, service of this ruling is waived except that the Clerk of Court shall mail a copy to the pro se plaintiff.

---

[7] In quoting the first part of paragraph 25(a) in paragraph 6 of her answer, Debtor omitted "and any debt" from the second sentence. Hence, the misquoted sentence read as follows: "Each party will list any marital debt in his/her own name in the bankruptcy." (Docket Number 4, at 2.)

[8] Debtor again misquoted the second sentence of paragraph 25(a) by omitting the words "and any debt." (Docket Number 8, at 3.)

(Docket Number 20.)

During the trial in this proceeding, Plaintiff offered and the Court admitted the February 25, 2009 letter from AmeriCredit (Exhibit 1) and the November 24, 2009 state court order (Exhibit 2).[9] Debtor offered and the Court admitted the August 21, 2008 dissolution decree (Exhibit A).

During his case-in-chief, Plaintiff testified that it was his understanding that "[Debtor] was awarded the Saturn vehicle, and she assumed all debt and liability. I was to be held harmless of all the responsibilities of that." (Tr. 8, ll. 15-17.) He noted that Debtor was in possession of the vehicle at the time they signed the decree and that she subsequently allowed the vehicle to be repossessed. That resulted in a deficiency "which in my mind is a different debt compared to filing against a vehicle as the decree states. Plus the decree -- The way it's worded is that she assumes all debt and liability." (Tr. 8, l. 25 – Tr. 9, l. 4.) Plaintiff also thought the contempt order established that the deficiency was Debtor's responsibility.

Upon cross-examination, Plaintiff acknowledged that paragraph 25(a) indicated that Debtor and he had agreed to file for bankruptcy.[10] He also agreed that paragraph

---

[9] Both at the beginning of the trial when Plaintiff presented a copy of Exhibit 2 and during closing arguments, Debtor's attorney represented to this Court that he had not been aware of the state court order of contempt. However, nothing in the record suggests a reason why Debtor would not have known about the order. Since Plaintiff mentioned such an order in his complaint, it is not clear to this Court why Debtor's attorney did not pursue appropriate discovery regardless of what his client might have represented to him about the existence of such an order.

[10] Plaintiff also responded affirmatively when Debtor's attorney asked "[a]nd it's my understanding that you filed bankruptcy after the divorce and after the contempt proceedings; correct?" (Tr. 11, ll. 17-19.) The court reporter's transcription is consistent with what this Court heard Debtor's attorney ask and Plaintiff answer. Hence, this Court must assume that Debtor's attorney misstated the question and Plaintiff misunderstood the question. That is, the question was inconsistent with Debtor's position that Plaintiff did not file a bankruptcy petition after their divorce, and a search of the national PACER Case Locator yielded no results consistent with the answer Plaintiff gave. (A "David Vogt" did file a petition for relief in the United States Bankruptcy Court for the District of Nevada on November 4, 2010, the day before the trial in this action, but that debtor's address does not match Plaintiff's address in this proceeding and that debtor indicated in paragraph 15 of his statement of financial affairs that he had not

25(d) referenced "vehicle" debts. However, on redirect, Plaintiff again questioned the applicability of paragraph 25(d) in the deficiency setting and focused instead on the wording of paragraph 23(a) that indicated Debtor was to hold him harmless for any debt or other liability related to the debt in issue. He concluded that "[s]o in my mind, she assumed, regardless of what everything else says, by her signing this herself and with that clause, that should not allow that to be a joint debt." (Tr. 12, ll. 22-25.)

Upon direct examination by her attorney, Debtor testified that the "Americredit Financial Service" debt appearing on Schedule F was for the Saturn Aura mentioned in the dissolution decree and was a joint debt with Plaintiff.[11] However, when asked upon cross-examination whether paragraph 25(d) of the dissolution decree gave "a description for a repossessed auto being part of a joint debt or anything else," Debtor responded: "No. It just says 'vehicle,' amongst other things." (Tr. 30, ll. 1-4.)

APPLICABLE STATUTORY PROVISION

11 U.S.C. section 523 provides in relevant part that:

(a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt--

> . . .
>
> (15) to a . . . former spouse . . . and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce . . . or in connection with a . . . divorce decree or other order of a court of record.

---

moved within three years prior to the commencement of his case. There are also a few cases filed by David Vogts who have middle names that begin with the letter K, but those cases were filed between 1991 and 2001. Indeed, it is possible that Plaintiff is the David Keith Vogt that filed Case No. 98-04899-rjh7 in this district on November 5, 1998.)

[11] Between her responses on direct examination and cross-examination, Debtor clarified that the scheduled October 2007 loan from GMAC was a lease for a Tahoe and was a joint debt with Plaintiff. (This debt is not specifically mentioned in the dissolution decree.) Debtor's testimony further established that the scheduled auto lease with GMAC was the Chevy Silverado lease mentioned in paragraph 23(b) of the dissolution decree. (Plaintiff reported he has paid off that lease.)

11 U.S.C. § 523(a)(15).[12]

DISCUSSION

Debtor contends that Plaintiff's failure to seek bankruptcy relief, contrary to the purported agreement of the parties in paragraph 25(a) of the dissolution decree,[13] renders the hold harmless provision found in paragraph 23(a) of the decree a dischargeable debt. Plaintiff contends that the bankruptcy provision should not apply because paragraph 25(d) of the decree does not extend to the unsecured deficiency resulting from the repossession and liquidation of the Saturn Aura. The record supports the Plaintiff's contention.

In its order of contempt, the state court unequivocally held Debtor responsible for the deficiency owed AmeriCredit. Though the attorney who represented Debtor in the dissolution proceeding testified that the party not filing a bankruptcy petition would be responsible for any joint debt, she was not asked whether the parties intended the concept of joint debt to extend to a subsequent deficiency debt that a state court would order only one of the parties to pay. Both the attorney who represented the Plaintiff in the dissolution proceeding and Debtor testified that paragraph (25)(d) of the decree was silent about the type of debt in issue. Hence, this Court is not persuaded by Debtor's argument that the state court order of contempt is of no moment due to it predating her bankruptcy filing and due to Plaintiff not yet seeking bankruptcy protection.

---

[12] 11 U.S.C. section 523(a)(5) excepts domestic support obligations from discharge.

[13] Though the August 21, 2008 dissolution decree did indicate that Plaintiff and Debtor intended to file separate bankruptcy petitions in the future, Plaintiff has not done so to date and Debtor did not do so until March 19, 2010—after the state court found her in contempt on November 24, 2009. If the parties truly agreed to file bankruptcy petitions as a result of their mediation, this Court must wonder why they did not set a deadline by which such action had to be taken.

CONCLUSION

WHEREFORE, for the reasons set forth in this Memorandum of Decision, the Court finds that Debtor's discharge under section 727 does not discharge the AmeriCredit hold harmless obligation Debtor owes Plaintiff (to the extent Plaintiff does in fact pay such debt) and does not discharge the $250.00 filing fee Plaintiff incurred in bringing this action.

A separate Order and Judgment shall be entered accordingly.

/s/ Lee M. Jackwig
Lee M. Jackwig
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding; David K. Vogt